O

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JONATHAN SANTOS,

             Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,
et al.

           Defendants.

Case No. CV 12-00694-OP

MEMORANDUM OPINION; ORDER

     The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

---

    [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (ECF Nos. 9, 20.)

    [2]  As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).  (ECF No. 7 at 3.)

# I.

## PROCEDURAL HISTORY

On May 28, 2008, Jonathan Santos ("Plaintiff") applied for Social Security Disability benefits and, on May 31, 2008, Plaintiff protectively filed an application for Supplemental Security Income. (Administrative Record ("AR") at 25, 120-27.) On July 28, 2008, his applications were denied. (Id. at 80-87.) On August 27, 2008, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), whereupon a hearing occurred on May 21, 2010. (Id. at 88-89, 63-79.) The ALJ issued an unfavorable decision on October 15, 2010. (Id. at 22-39.) Plaintiff timely appealed the hearing decision to the Appeals Council, which denied review on November 20, 2011. (Id. at 1-21.) Thus, the ALJ's decision is the Commissioner's final decision in this matter.

On January 26, 2012, Plaintiff filed a Complaint seeking review in this Court of the Commissioner's decision denying Social Security benefits. On August 6, 2012, Defendant filed an Answer to the Complaint. On January 24, 2013, filed a Joint Stipulation ("JS") identifying the disputed issues before the Court for review.

# II.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1)   Whether the ALJ properly considered the credibility of Plaintiff and his mother;

(2)   Whether the ALJ failed to properly consider whether Plaintiff met or equaled Listing 12.05;

(3)   Whether the ALJ failed to properly consider behavioral testing; and

(4)   Whether the Appeals Council erred in failing to remand in light of newly submitted vocational reports.

1 (JS at 8.)

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## IV.

## DISCUSSION

**A.   The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairment of borderline intellectual functioning. (AR at 28.) The ALJ found Plaintiff's horseshoe kidney and cholelithiasis to be non-severe impairments. (Id.) The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but is limited to work with simple and repetitive tasks. (Id. at 30.)

Relying on the testimony of the vocational expert ("VE"), the ALJ determined that given Plaintiff's age, education, work experience, and RFC, he is

1   capable of performing his past relevant work as a warehouse worker.  (Dictionary
2   of Occupational Titles ("DOT") No. 922.687-058).)  (AR at 34.)  In the
3   alternative, the ALJ determined that Plaintiff could perform the requirements of
4   the occupations of laundry laborer (DOT No. 361.687-018), hand packager (DOT
5   No. 920.587-018), and housekeeping cleaner (DOT No. 323.687-014).  (AR at
6   35.)

7   **B.**    **The ALJ Failed to Properly Consider Plaintiff's Credibility.**

8   Plaintiff contends that the ALJ improperly rejected his subjective
9   complaints of impairment.  (JS at 8, 15-19.)  The Court agrees.

10   The ALJ rejected Plaintiff's credibility as follows:

11   In terms of the claimant's alleged mental limitations, the objective
12   evidence in the record does not fully support it.  The record shows the
13   claimant has learning disabilities that are exacerbated by lapses in
14   attention, concentration and memory.  Claimant graduated from high
15   school in June 2005, and was a special education student from
16   kindergarten throughout his education career.  Claimant denied any
17   symptoms of non-cognitive psychological disorder, such as anxiety,
18   depression or psychotic processes.

19   . . . .

20   Under 20 CFR 404.1529 and 416.629 as well as Social Security
21   Ruling 96-7p, the undersigned may consider the claimant's work history
22   in assessing his credibility.  Claimant had a sparse work history;
23   therefore, claimant's work history does not enhance credibility of his
24   disability statements.

25   The claimant's daily activities of taking care of his personal
26   needs, going to work every day, driving in his neighborhood, watching
27   television, playing video games and basketball, listening to music and
28   interacting with friends and family are fully consistent with assessment

4

1    in Finding No. 6.

2         . . . .

3         The undersigned considered but gave little probative weight to the
4    claimant's testimony.  Claimant's complaints appear exaggerated and/or
5    motivated largely by secondary gain factors.  He stated that he is unable
6    to work in the competitive environment due to doing incomplete work,
7    being easily distracted and a need for someone to keep him on task.
8    Nevertheless, his testimony shows that he is fully aware of these
9    deficiencies.  Claimant has been able to finish high school and was
10   motivated to study computer designs; he has obtained the driver's
11   license and wants to be independent.   While working at Deseret
12   Industries for a full year at the substantial gainful activity level, he was
13   using public transportation five days a week, and did not have any
14   documented work performance problems.   Overall, the objective
15   evidence of the record shows that with the proper effort and motivation,
16   claimant is able to perform jobs involving simple and repetitive tasks on
17   the regular and continuous basis.

18   (Id. at 31, 33, 34 (citation omitted).)

19        An ALJ's assessment of a claimant credibility is entitled to "great weight."
20   Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
21   F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's
22   testimony is a critical factor in a decision to deny benefits, the ALJ must make
23   explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.
24   1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v.
25   Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was
26   not credible is insufficient).

27        Under the "Cotton test," where the claimant has produced objective medical
28   evidence of an impairment which could reasonably be expected to produce some

                                        5

degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).  In other words, an ALJ may reject a claimant's testimony only upon "(1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton ex. el. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.  Social Security Ruling 96-7p further provides that an individual may be less credible for failing to follow prescribed treatment without cause.  Soc. Sec. Ruling 96-7p.  An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony.  Bunnell, 947 F.2d at 345-47.

Here, there is no evidence in the record suggesting that Plaintiff is malingering.  Accordingly, the ALJ could reject Plaintiff's testimony regarding the severity of his symptoms only if the ALJ stated clear and convincing reasons for

1    doing so.  See Cotton, 799 F.2d at 1407; see also Smolen, 80 F.3d at 1281;

2    Dodrill, 12 F.3d at 918; Bunnell, 947 F.2d at 343.  The ALJ put forth a large

3    number of apparent reasons for rejecting Plaintiff's credibility.  However, as

4    discussed below, these reasons are not clear and convincing.

5         The ALJ first states that Plaintiff's "alleged mental limitations" are not fully

6    supported by the objective evidence.  (AR at 31.)  The ALJ repeats this reason

7    later in his decision.  (Id. at 34.)  Of course, "an adjudicator may not reject a

8    claimant's subjective complaints based solely on a lack of objective medical

9    evidence to fully corroborate the alleged severity of the [symptoms]."  Bunnell,

10   947 F.2d at 345.  As discussed below, the Court rejects each of the other reasons

11   offered by the ALJ for rejecting Plaintiff's credibility.  Accordingly, the lack of

12   objective medical evidence, standing alone, is insufficient to sustain the ALJ's

13   credibility determination.

14        Next, the ALJ points to Plaintiff's ability to graduate from high school as an

15   apparent indicator that he has exaggerated his symptoms.  (AR at 31, 34.)

16   However, the record reveals that Plaintiff was in an intensive special education

17   program throughout his school years, received failing or barely passing grades in

18   most of his high school courses, was not on course to "meet the graduation

19   requirement for a regular high school diploma" as of the end of his junior year in

20   high school, graduated one year after his expected graduation date, and ended high

21   school ranked 444 out of 447 students.  (Id. at 187-88, 244-60.)  This academic

22   record is not clear and convincing proof that Plaintiff's subjective complaints of

23   impairment lacked credibility.

24        The ALJ further noted that Plaintiff denied suffering from any non-

25   cognitive psychological disorder.  (Id. at 31.)  It is not clear whether the ALJ

26   intended this observation to help form the basis of his credibility determination.

27   Nevertheless, this reason is not a clear and convincing reason to reject Plaintiff's

28   subjective complaints.  It cannot be doubted the Plaintiff's denial of non-cognitive

7

1   impairments have no relevance to the extent to which Plaintiff suffers cognitive
2   impairments.  In fact, Plaintiff's denial of non-cognitive symptoms supports his
3   credibility, as it is clear he did not attempt to allege nonexistent impairments.

4          The ALJ next cites to Plaintiff's sparse work history.  However, the ALJ
5   does not cite this reason as a basis for rejecting Plaintiff's credibility.  Rather, the
6   ALJ merely finds that Plaintiff's sparse work history "does not enhance"
7   Plaintiff's credibility.  A factor that does not "enhance" a plaintiff's credibility is
8   not a clear and convincing reason for rejecting that plaintiff's credibility.

9          Next, the ALJ concludes that Plaintiff's daily activities are not inconsistent
10  with the ALJ's RFC assessment.  Specifically, the ALJ cited Plaintiff's ability to
11  take care of his personal needs, go to work every day, drive in his neighborhood,
12  watch television, play video games and basketball, listen to music, and interact
13  with friends and family.  (Id. at 33.)  Later in his opinion, the ALJ also cites to the
14  fact that Plaintiff can use public transportation and has a driver's license as
15  reasons to reject Plaintiff's subjective statements.  (Id. at 34.)  Daily activities can
16  form the basis of an adverse credibility finding where the claimant's activities
17  either contradict his or her other testimony or meet the threshold for transferable
18  work skills.  See Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012); Orn v.
19  Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  For a credibility analysis, the ALJ need
20  not consider whether a claimant's daily activities are equivalent to full-time work;
21  it is sufficient that the claimant's activities "contradict claims of a totally
22  debilitating impairment."  Molina, 674 F.3d at 1113.  A claimant, however, need
23  not be utterly incapacitated to receive disability benefits, and sporadic completion
24  of minimal activities is insufficient to support a negative credibility finding.
25  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Reddick v.
26  Chater, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be
27  inconsistent with the claimant's claimed limitations to be relevant to his or her
28  credibility).  None of the daily activities cited by the ALJ, save for the ability to go

8

1  to work every day, are inconsistent with Plaintiff's claimed limitations.  That

2  Plaintiff can engage in leisurely or sporadic activity does not prove that he can

3  maintain the concentration and pace sufficient to perform sustained work activity.

4         As for Plaintiff's ability to work, the ALJ concluded that Plaintiff is able to

5  go "to work every day" and that he was able to work for a full year at the

6  substantial gainful activity level without "any documented work performance

7  problems." (AR at 33, 34.)  The ALJ's conclusions are suspect.  Presumably, the

8  ALJ is referring to Plaintiff's work at Deseret Industries in 2006 and 2007, as that

9  is the job he cites in his decision.  (Id. at 34, 135, 137, 139, 142.)  However, the

10  record does not contain any reports from Plaintiff's work at Deseret Industries so

11  it would be impossible for the ALJ to conclude that Plaintiff went to work every

12  day and had no documented work performance problems.  What the record does

13  contain, however, are progress reports from Plaintiff's later job through San

14  Gabriel Valley Training Center.[3]  These reports show that Plaintiff appeared at

15  work each day, but was consistently late.  (Id. at 223, 227, 229, 231-33, 235, 241,

16  269.)  More significantly, in all but one of these progress reports, Plaintiff's case

17

18  ───────────────

19       [3]  The Court notes that some of these records were not presented to the ALJ.
   Progress notes from Plaintiff's employment training program were presented to the
20  Appeals Council along with Plaintiff's request for review, but they were not
   available to the ALJ.  Where, as here, the Appeals Council considered additional
21  material but denied review, the additional material becomes part of the
   Administrative Record for purposes of the Court's analysis.  Warner v. Astrue,
22
   859 F. Supp. 2d 1107, 1110 (C. D. Cal. 2012) (citing Harman v. Apfel, 211 F.3d
23  1172, 1179-80 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir.
   1993); Penny v. Sullivan, 2 F.3d 953, 957 n.7 (9th Cir. 1993); 20 C.F.R. §§
24  404.970(b), 416.1470(b)).  Accordingly, the Court may consider this new evidence
25  when considering whether the ALJ's decision is supported by substantial
   evidence, even if the evidence was not available to the ALJ at the time of the
26
   decision.  Warner, 859 F. Supp. 2d at 1115 n.10 (citing Taylor v. Comm'r of Soc.
27  Sec., 659 F.3d 1228 (9th Cir. 2011)).

28

manager or job coach reported significant deficiencies in Plaintiff's ability to do his work.  It was constantly reported that Plaintiff talked excessively, made many mistakes, did not take directions well, needed constant reminders and redirection, would daydream and lose focus, could not follow safety guidelines, left his work area, and had grooming and hygiene issues.  (Id. at 223, 227-42.)  These reports are entirely consistent with Plaintiff's statements that he lacks focus and is easily distracted.  It should be noted that Plaintiff retained employment despite his poor performance because he was employed through a training program for the developmentally disabled.  Thus, rather than disproving Plaintiff's subjective complaints, his work performance actually confirms his impairments.

The ALJ also cited Plaintiff's awareness of his deficiencies as a basis upon which to reject his credibility.  (Id. at 34.)  In light of the fact that Plaintiff has been developmentally delayed his entire life, was in a full-time special education program throughout his education, was a part of a special employment training program, and is undoubtedly aware of his many employment reports and psychological assessments, it is not surprising that Plaintiff is fully aware of his cognitive deficiencies.  This, however, is not proof that Plaintiff has any control over those deficiencies or that those deficiencies do not exist.  Accordingly, this reason is not a clear and convincing basis upon which to reject Plaintiff's credibility.

Finally, the ALJ cites to Plaintiff's motivation to study computer design as proof that his subjective complaints lack credibility.  (Id.)  The ALJ cites to two notations in a program plan assessment completed for purposes of regional center services.  (Id. at 34, 335, 349.)  While these notations reflect that Plaintiff aspired to attend college and study graphic design, they offer no insight into Plaintiff's ability to achieve these goals.  Notably, Plaintiff never made any attempt to study graphic design and certainly did not complete any course of study in this area.  Accordingly, Plaintiff's hopes of achieving bigger things is not proof that he was

10

realistically capable of attaining such goals or that his subjective complaints of impairment lacked credibility.

Because the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's credibility, this action must be remanded to allow the ALJ to properly consider Plaintiff's subjective complaints of impairment and provide legally sufficient reasons for rejecting Plaintiff's credibility, if the ALJ again determines rejection is warranted.[4]

**C.   The ALJ Properly Consider the Credibility of Plaintiff's Mother.**

Within claim one, Plaintiff appears to argue that the ALJ erred in rejecting the credibility of Plaintiff's mother, Ana Santos.  (JS at 15-17.)

The ALJ rejected the testimony of Ms. Santos, finding that her "testimony is outweighed by the objective medical evidence and other credibility factors in the record."  (AR at 33.)

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provide that in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [his] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn hearing testimony of witnesses, see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996), as well as to unsworn statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment.  Nguyen, 100 F.3d at 1467.  The ALJ must provide "reasons that are germane to each witness." Dodrill, 12 F.3d at 919 (9th Cir. 1993).

---

[4]  The Court expresses no view on the merits.

11

1    Here, the ALJ acknowledged Ms. Santos' statements and rejected them on

2 the basis of reasons that were germane to that witness.  The Court does not

3 consider the persuasiveness of the ALJ's reasons for rejecting Ms. Santos'

4 statements.  Thus, the ALJ fulfilled his duty to consider the evidence and provide

5 sufficient reasons for rejecting the third party evidence.

6    **D.    The ALJ's Consideration of the Medical Expert's Opinion.**

7    Also within claim one, Plaintiff appears to argue that the ALJ erred in

8 giving greater weight to the opinion of Harrell Reznick, Ph.D., the examining

9 Agency psychologist, than to the opinion of Larry E. Gaines, Ph.D., an

10 independent examining psychologist.  Plaintiff appears to argue that the ALJ

11 should have given more weight to Dr. Gaines' opinions because he administered

12 the Vineland Behavioral Scales during his evaluation of Plaintiff, and Dr. Reznick

13 did not.  (JS at 17-19.)

14    The ALJ considered the opinions of the two examining psychologists and

15 determined that less weight should be given to the opinions of Dr. Gaines because

16 "he did not define the claimant's work-related functional limitations."  (AR at 34.)

17 In evaluating medical opinions, the case law and regulations distinguish among

18 the opinions of three types of physicians: (1) those who treat the claimant (treating

19 physicians); (2) those who examine but do not treat the claimant (examining

20 physicians); and (3) those who neither examine nor treat the claimant

21 (nonexamining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902,

22 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally,

23 the opinions of treating physicians are given greater weight than those of other

24 physicians, because treating physicians are employed to cure and therefore have a

25 greater opportunity to know and observe the claimant.  Orn, 495 F.3d at 631;

26 Smolen, 80 F.3d at 1285.  The ALJ may only give less weight to a treating

27 physician's opinion that conflicts with the medical evidence if the ALJ provides

28 explicit and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at

12

1   830-31; see also Orn, 495 F.3d at 632-33; Soc. Sec. Ruling 96-2p.  Similarly, "the

2   Commissioner must provide 'clear and convincing' reasons for rejecting the

3   uncontradicted opinion of an examining physician."  Lester, 81 F.3d at 830

4   (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990)).  Even where an

5   examining physician's opinion is contradicted by another doctor, the ALJ must

6   still provide specific and legitimate reasons supported by substantial evidence to

7   properly reject it.  Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043

8   (9th Cir. 1995)).

9        Assuming without deciding that Dr. Gaines' report was contradicted by Dr.

10  Reznick's report, or other evidence in the record, the ALJ still was required to

11  present specific and legitimate reasons for rejected Dr. Gaines' conclusions.  The

12  Court concludes that the reason offered by the ALJ for giving less weight to Dr.

13  Gaines' report, that the report did not specify work-related functional limitations,

14  was specific but not legitimate.

15       First, the ALJ, not an examining physician, is responsible for determining a

16  claimant's residual functional capacity, and no medical provider opinion or

17  testimony is conclusive on this issue.  Soc. Sec. Ruling 96-5p.  In light of the fact

18  that the ALJ maintains the ultimate duty to decide what functional limitations the

19  claimant has, it is not legitimate to reject an examining source opinion on the basis

20  that it did not provide the ALJ with these specific work-related functional

21  limitations.

22       Second, even assuming that the ALJ required such a functional limitation

23  assessment from Dr. Gaines, the ALJ had a duty to develop the record by

24  requesting this additional information from the examining source.  Mayes v.

25  Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to develop the

26  record is triggered "when the record is inadequate to allow for proper evaluation

27  of the evidence").  This duty applies whether or not the claimant is represented,

28  and is "heightened where the claimant may be mentally ill and thus unable to

1  protect [his or her] own interests." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150

2  (9th Cir. 2001) (citing <u>Higbee v. Sullivan</u>, 975 F.2d 558, 562 (9th Cir. 1992)); <u>see</u>

3  <u>also</u> <u>DeLorme</u>, 924 F.2d at 849 ("In cases of mental impairments, this duty [to

4  develop the record] is especially important."). It is clear the ALJ believed such

5  information was crucial to his disability determination and thus should have

6  requested additional evidence from Dr. Gaines.

7      Because the ALJ failed to give specific and legitimate reasons for rejecting

8  Dr. Gaines' opinions, and because this action must be remanded for a new

9  determination of Plaintiff's credibility, on remand the ALJ must again consider the

10  report of Dr. Gaines and provide legally sufficient reasons for rejecting this report,

11  if the ALJ again determines rejection is warranted.[5]

12  **E.   The ALJ's Consideration of Listing 12.05.**

13      In his second claim, Plaintiff argues that the ALJ erred in finding that

14  Plaintiff does not qualifies for Social Security Disability benefits under the

15  requirements of Listing 12.05. Specifically, Plaintiff focuses his argument on

16  Listing 12.05D. (JS at 19-21.)

17      According to Listing 12.05, a claimant's impairment will meet that listing if

18  it satisfies any of the given criteria of the listing. 20 C.F.R. pt. 404, subpt. P, app.

19  1, § 12.05. In the case of Listing 12.05D, the following criteria are required to

20  support a disability finding: (1) a valid verbal, performance, or full scale IQ of 60

21  through 70; and (2) the condition resulted in two of the following: marked

22  restriction of activities of daily living; marked difficulties in maintaining social

23  functioning; deficiencies of concentration, persistence or pace; or repeated

24  episodes of decompensation in work or work-like settings which cause the

25  individual to withdraw from that situation or to experience exacerbation of signs

26  or symptoms. <u>Id.</u> § 12.05D Listing 12.05 itself "does not require a diagnosis or

27  _____

28      [5] The Court expresses no view on the merits.

14

finding of 'mental retardation,' but relies instead on valid IQs in conjunction with other evidence to establish 'subaverage general intellectual functioning.'" Gomez v. Astrue, 695 F. Supp. 2d 1049, 1057-58 (C.D. Cal. 2010) (citing Soc. Sec. Ruling 83-19).

Here, the ALJ acknowledged Plaintiff's Performance IQ score of 69 and Full Scale IQ score of 70. (AR at 28-29.) Accordingly, Plaintiff meets the first prong of Listing 12.05D. However, Plaintiff cannot establish that he satisfies two of the restrictions identified in the second prong of Listing 12.05D. It is unclear whether Plaintiff might be found to have sufficient deficiencies of concentration, persistence, or pace to satisfy the Listing had his subjective complaints and his more current employment progress reports been considered by the ALJ. However, substantial evidence supports the ALJ's conclusion that Plaintiff does not satisfy a second restriction.

The ALJ concluded that Plaintiff had only moderate restrictions in activities of daily living. (Id. at 29.) The record supports a finding that Plaintiff can attend to his basic needs, complete some household chores, drive in his immediate neighborhood, and engage in leisure activity. (Id. at 218, 293.) Consistent with these activities, the July 23, 2008, Psychiatric Review Technique form reported that Plaintiff suffers from moderate restrictions in activities of daily living. (Id. at 307.) All of this evidence supports the ALJ's conclusion as to this element of Listing 12.05D.

Next, the ALJ found that Plaintiff suffered only mild restrictions in social functioning. This too is supported by substantial evidence. Plaintiff maintained good relationships with friends and family, and engaged in social activity outside of the house. (Id. at 218, 221, 292-93.) Plaintiff's July 23, 2008, Psychiatric Review Technique assessment reflects mild difficulties in maintaining social functioning. (Id. at 307.) Although a Vineland Adaptive Behavior Scale test administered on June 7, 2010, resulted in findings that Plaintiff had moderate

15

1  deficiencies in social skills, such a result still does not support a Listing level

2  impairment in Plaintiff's level of social functioning.  (Id. at 218.)

3       Finally, the ALJ's finding that Plaintiff did not experience any episodes of

4  decompensation is also supported by the record.  There is simply no evidence that

5  Plaintiff has suffered any episodes of decompensation.  There is no evidence that

6  Plaintiff has withdrawn or experienced exacerbated symptoms in the workplace, at

7  home, or in social situations.

8       Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's

9  impairment did not meet the requirements of Listing 12.05D.

10  **F.**    **The ALJ's Consideration of the Evidence.**

11       In claim three, Plaintiff argues that the ALJ erred in failing to acknowledge

12  the significance of Plaintiff's IQ test scores and failing to recognize the Agency

13  examining psychologist's failure to administer a standardized test for functioning.

14  (JS at 21-22.)

15       The ALJ is responsible for considering the medical evidence of record in

16  making a determination of disability.  20 C.F.R. §§ 404.1512(d), (e), 404.1527,

17  404.1545(a)(3).  However, the ALJ is not required to "discuss every piece of

18  evidence" so long as the decision was supported by substantial evidence.  Howard

19  ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).  Rather, the ALJ

20  need only explain why "significant probative evidence has been rejected."

21  Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (internal

22  quotation marks omitted) (citation omitted).

23       As to Plaintiff's IQ scores, the ALJ considered these scores and discussed

24  the scores as they related to Listing 12.05.  (AR at 28-29.)  As to the testing

25  conducted by the examining psychologists, as discussed above, the ALJ failed to

26  give adequate reasons for giving greater weight to Dr. Reznick's opinions than to

27  Dr. Gaines' opinions.  Because this action must be remanded for further

28  consideration of the examining psychologists' opinions and to further assess

16

1  Plaintiff's credibility, on remand the ALJ should again consider the evidence
2  related to Plaintiff's IQ scores and behavioral and/or functioning tests.
3  **G.    The Appeals Council's Decision.**
4       Plaintiff argues that the Appeals Council abused its discretion in denying
5  review in light of errors made by the ALJ.  (JS at 22.)
6       The Social Security Act confers jurisdiction on United States district courts
7  to review "any final decision . . . made after a hearing."  42 U.S.C. § 405(g).  An
8  Appeals Council's denial of a request for review or a denial of a request to reopen
9  a claim is a discretionary decision and therefore generally is not subject to judicial
10 review.  See Klemm v. Astrue, 543 F.3d 1139, 1144 (9th Cir. 2008); see also Udd
11 v. Massanari, 245 F.3d 1096, 1098-99 (9th Cir. 2001); Evans v. Chater, 110 F.3d
12 1480, 1482 (9th Cir. 1997).
13      However, there are exceptions to this general rule.  Section 405(g) does not
14 act as a bar to resolution of constitutional questions.  Klemm, 543 F.3d at 1144;
15 Califano v. Sanders, 430 U.S. 99, 109, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).
16 "Constitutional questions obviously are unsuited to resolution in administrative
17 hearing procedures and, therefore, access to the courts is essential to the decision
18 of such questions."  Sanders, 430 U.S. at 109.  This exception is applied to "any
19 colorable constitutional claim of due process violation that implicates a due
20 process right either to a meaningful opportunity to be heard or to seek
21 reconsideration of an adverse benefits determination."  Klemm, 543 F.3d at 1144.
22      Here, Plaintiff challenges a discretionary decision by the Appeals Council
23 and has not argued that the decision at issue resulted in a constitutional violation.
24 Accordingly, the Court does not have jurisdiction to consider Plaintiff's claim.
25 / / /
26 / / /
27 / / /
28 / / /

17

1

## V.

## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion and Order.

DATED: March 1, 2013

HONORABLE OSWALD PARADA
United States Magistrate Judge

18